# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

---

Meredith Fergus,                                    USDC File No.: _____

        Plaintiff,

v.

Minnesota Office of Higher Education
and Winnie Sullivan, Individually
and as Deputy Commissioner
of the Office of Higher Education
for the State of Minnesota

        Defendants.

---

COMPLAINT FOR:
FEDERAL CLAIMS

1.   GENDER DISCRIMINATION IN VIOLATION OF TITLE VII, 42
     U.S.C. §2000E, *ET SEQ.*, AS AMENDED,
2.   42 U.S.C 1983.

STATE CLAIMS

3.   DISCRIMINATION BASED ON GENDER IN VIOLATION OF
     MINN. STAT. § 363A.08, *ET SEQ.* AS AMENDED

---

## NATURE OF THE CASE

1.    This is an action brought by Plaintiff Meredith Fergus, a United States

citizen and resident of the state of Minnesota (herein after "Meredith Fergus,"

"Meredith" or "Plaintiff") against the State of Minnesota, Winnie Sullivan,

Individually, and in her capacity as Deputy Commissioner.

JURISDICTION

2.      The jurisdiction of this Court is invoked pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended; the First, Fifth and Fourteenth Amendments, and 42 U.S.C. §1983, 28 U.S.C. §1331, [Federal Question] under statutory authority and 28 U.S.C. §1367(a), Supplemental Jurisdiction, of this Court. The matter in controversy exceeds, $75,000 exclusive of interest.

3.      The Court has jurisdiction over claims arising under Minnesota state law pursuant to its pendent jurisdiction and 28 U.S.C. §1367(a). The claims arising under Minnesota state law and the claims arising under federal law arise from the same case or controversy, and have a common nucleus of operative fact.

VENUE

4.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(1)-(2). Meredith Fergus resides in the State of Minnesota. A substantial part of the wrongs alleged herein were committed within Ramsey County, Minnesota, which is within the District of Minnesota.

PERSONAL JURISDICTION

5.      The federal courts have jurisdiction over the State of Minnesota who is the Defendant in this case.   The State of Minnesota does business throughout Minnesota including Ramsey County. State of Minnesota's principal office address

in Minnesota is Minnesota Office of Higher Education, 1450 Energy Park Drive, St.

Paul, MN St. Paul, MN 55108.

## THE PARTIES

### PLAINTIFF

### MEREDITH FERGUS

6.      Meredith Fergus (hereinafter known as "Meredith Fergus," "Meredith,"

"Fergus," or "Plaintiff") is a female person who is a United States citizen and a

resident of the State of Minnesota, County of Ramsey, City of St. Paul. She is a

natural person.  All conditions precedent to jurisdiction have occurred or been

complied with to wit: Plaintiff filed a joint charge with the EEOC and the MHRD

on August 6, 2021.  She was given a right to sue on March 18, 2022.  All conditions

have been done precedent to starting the instant complaint.  She filed the instant

lawsuit within 45 days of March 18, 2022.

### DEFENDANT

### STATE OF MINNESOTA

7.      The State of Minnesota is the employer of Defendant Meredith Fergus.

It has a principal executive office address of Minnesota Office of Higher Education,

1450 Energy Park Drive, St. Paul, MN St. Paul, MN 55108.

### NATURE OF THE CASE

8.      This is an action brought by Plaintiff Meredith Fergus, a United States

3

citizen and resident of the County of Ramsey in the State of Minnesota, an employee of State of Minnesota against State of Minnesota (hereinafter "State of Minnesota," "state" or the "employer"), which has been known by various other names as set forth above.  State of Minnesota is Plaintiff's current employer.

PROCEDURAL POSTURE

9.      Plaintiff, Meredith Fergus is a female person who is a citizen of the United States and the State of Minnesota and resides at 325 Arbor Street, in the City of St. Paul, Ramsey County, State of Minnesota.   The unlawful employment practices, harassment, discrimination and retaliation alleged herein were committed within the state of Minnesota.  Defendant State of Minnesota is a governmental body and is authorized to do business in and is doing business in the state of Minnesota. Defendant State of Minnesota is an employer engaged in an industry that affects commerce and employs more than 20 employees.  State of Minnesota is a "person" within the meaning of § 701(a) of title 7, 42 U.S.C §2000e

10.      Plaintiff, Meredith Fergus, experienced discrimination, harassment and retaliation while employed by State of Minnesota.  She timely filed a Charge of Discrimination with the EEOC which was cross filed with the Minnesota Human Rights Department.  On March 16, 2022, more than six months after the date the Charge was filed, Meredith Fergus requested a Right to Sue Notice, which was subsequently provided.  The Right to Sue was granted March 18, 2022.  Plaintiff

timely filed a Complaint in Federal Court within 45 days of receiving the Right to Sue notice on March 18, 2022.

GENERAL ALLEGATIONS

11.    Plaintiff brings this action for gender Discrimination pursuant to Title VII of the Civil Rights Act of 1964, et seq., as amended, (42 U.S.C. §2000e, et seq.), 42 U.S.C. 1983 as amended and under Minnesota Statue 363A.08

12.    Federal district courts may exercise supplemental jurisdiction over state claims not otherwise within their adjudicatory authority if those claims are part of the same case or controversy as the federal claims the plaintiff asserts. 28 U.S.C. §1367(a).

13.    Plaintiff's complaint lays out facts that meet all of the elements of a Title VII claim which abrogates the 11th Amendment. Further, 28 U.S.C. §1367, provides to the Federal Court the supplemental jurisdiction to hear state claims. Plaintiff's state claims have the same common nucleus of operative facts or in other words are the same case or controversy as the federal claims so the federal court can hear them both at the same time.

14.    Plaintiff as an employee of the state of Minnesota the Defendant in this case is entitled to a remedy under Title VII of the Civil Rights Act.

15.    Defendant has taken away the Plaintiff property by effecting her right to move ahead in her profession get raises, promotions, free speech, and has harmed

her reputation without due process. The state of Minnesota the defendant employer in this case has harmed Plaintiff's property right. It thereby has created a federal claim of deprivation of property without due process, invoking this court's federal question jurisdiction and providing an independent basis for the exercise of supplemental jurisdiction over the state's claims.

16.    State of Minnesota is responsible for its commissioners, supervisors, managers, employees and agents under respondeat superior.

FACTS

17.    The Plaintiff Meredith Fergus is female person that is 47 years of age.

18.    She started to work for State of Minnesota in 2008 and has continued to do so until present. Her present position with the state is the Director of Research Department of the Office of Higher Education.

19.    Plaintiff had consistent commendable performance reviews from the Defendant.

20.    Meredith Fergus became the co-manager of the Research Department in 2017 and solo manager of the department in 2018. Deputy Commissioner Diane O'Connor gave her a commendable performance review in 2017. Deputy Commissioner Winnie Sullivan gave her commendable performance reviews in 2018 and 2019.

21.    Problems with discrimination, harassment and retaliation at the

workplace developed after the hiring of Mr. Alex Hermida in Spring 2018. From the outset, Meredith Fergus noted that he had performance issues on his 2018 and 2019 performance reviews, and frequently discussed with Deputy Commissioner Winnie Sullivan that Mr. Hermida was resistant to direction and feedback from her. The basis for this resistance was because Mr. Hermida a male did not want to take direction from Plaintiff who is a female.

22.     Deputy Commissioner Winnie Sullivan and Meredith Fergus discussed strategies for handling the performance issues (e.g., issuing instructions in writing, ensuring expectations were communicated clearly).

23.     Classes for Alex Hermida were supported by Winnie Sullivan as an attempt to find other performance management strategies to deal with Mr. Hermida given his resistance to strategies tried to date and Deputy Commissioner Winnie Sullivan's hesitancy to move ahead with dismissing Alex Hermida. The Defendants' failure to remove Mr. Hermida was a failure to take prompt remedial action which was an adverse employment action that caused Plaintiff severe damage.

24.     During multiple conversations between January-December 2020 between Meredith Fergus and Deputy Commissioner Winnie Sullivan it was noted, that Alex Hermida's gender discriminatory behavior towards Meredith Fergus was escalating. It was also noted that as his supervisor, Meredith Fergus was "unable to walk away from" his actions because she was his supervisor and it was considered

7

her job by Defendants to remediate the behavior and performance of him.

25.     Mr. Hermida took discriminatory issue with all of the prior performance management strategies tried by Meredith Fergus (e.g. following up on tasks in writing to ensure expectations are clear, making sure tasks are completed as communicated by Plaintiff both verbally and in writing, checking in with Meredith Fergus early on in projects to ensure the deliverable is on track in terms of time and quality, giving feedback in writing).

26.     On February 10, 2020, prior to Mr. Hermida filing a complaint against Meredith Fergus, Plaintiff issued Alex Hermida a written warning about yelling at her following a meeting with Commissioner Olson in which Mr. Hermida refused to comply with a request.

27.     On February 26, 2020, Mr. Hermida took time off without notification of or approval of his supervisor, Meredith Fergus. She issued him a verbal warning. Meredith Fergus and Deputy Commissioner Winnie Sullivan subsequently discussed the appropriate steps to take to dismiss Mr. Hermida which included Meredith Fergus documenting in detail Alex Hermida's performance issues. It is following these incidents that Mr. Hermida chose to file a Respectful Workplace complaint in retaliation to the disciplinary action. It is clear to Meredith Fergus that Mr. Hermida was attempting to pre-empt his dismissal by attacking Meredith Fergus using the HR complaint process.

28.     In approximately the early part of 2020 in an effort to discredit and retaliate against Plaintiff her subordinate Mr. Hermida continued his discrimination and harassment of Plaintiff by making the forgoing unfounded retaliatory complaint.

29.     The 2020 complaint by Mr. Alex Hermida did not refute his poor performance, nor did the Defendant properly investigate his discriminatory, harassing and retaliatory behavior.

30.     During alleged spring 2020 investigation into Mr. Hermida's complaint, there was an emphasis by Defendants to find support for Mr. Hermida and discredit Plaintiff to placate Mr. Hermida who repeatedly tried to assert that as a minority he was being discriminated which was a cover to deflect from his poor performance on the job and discriminatory animosity to taking direction from a woman.

31.     The investigation rather than looking at the true source of the discriminatory problem at the work place created by Mr. Hermida, instead used a blame the victim approach and made a finding that Meredith Fergus had raised her voice at him in a public area following his refusal to act in a professional manner and continued arguments against complying with repeated requests from Meredith Fergus and the OHE Finance staff who complained to Plaintiff about` his   failure to follow purchasing guidelines as requested by OHE Financial Staff.

32.     Despite the fact that the so called investigation finding ignored the

hostile work environment created by Mr. Hermida and his being the source of all of the problems that came out of his discrimination, harassment and retaliation, Plaintiff in an effort to show her continuing dedication to be a good team player agreed to not repeat this alleged behavior, even though it was a natural consequence of the outrageous insubordination and related discrimination by Mr. Hermida of her. Notwithstanding, the so called questionable at best investigation finding it did not contradict Meredith Fergus's documentation of Mr. Hermida's performance as below expectations or the discriminatory, harassing, retaliatory, negative and hostile behavior of Mr. Hermida.

33.     Despite the gender discrimination and harassment by Mr. Hermida of Plaintiff in November 2020 Deputy Commissioner Winnie Sullivan still was hesitant about continuing with the plan to dismiss Mr. Hermida as she claimed it could be seen as retaliation for his unfounded retaliatory spring 2020 complaint. It was at this time that Meredith Fergus spoke of taking additional coaching courses in an attempt to develop strategies to remediate Mr. Hermida's discriminatory, harassing and retaliatory behavior, poor performance and end the negative and discriminatory hostile impact he was having on her and her team.

34.     Meredith Fergus wanted to do everything she could do stop the discrimination, harassment and retaliation by Alex Hermida.  In a further effort to try to find a solution she volunteered to take coaching classes.  Volunteering to take

coaching classes is consistent with Meredith Fergus's self-awareness and her continued attempts to improve her management style.

35.    The Defendants ignored Plaintiff's 2021 complaint against Mr. Hermida.  The state who is the Defendants never investigated Plaintiff's complaint, and HR did not meet with her.  The Defendants to cover up their not taking prompt remedial action much later created a fictional claim that Plaintiff had met with HR, which was not true.

36.    When Meredith Fergus filed the March 15, 2021, complaint against Mr. Hermida, she was informed by the HR that it had been received and would be investigated. Meredith Fergus was later informed that the investigation of her complaint was on hold due to a complaint by Mr. Hermida filed against Meredith Fergus. To date, Meredith Fergus has not been informed that the investigation was ever conducted except in a specious letter sent months later by the state claiming that Plaintiff had talked to HR.  To date, HR has never met with Meredith Fergus and has not indicated verbally or in writing the outcome of that complaint. Defendants continued to deflect from addressing their failure to take prompt remedial action to correct the situation with Alex Hermida by falsely blaming Meredith Fergus for Hermida's inexcusable discriminatory, harassing and retaliatory conduct.  Meredith Fergus allegedly had a "management issue" as stated months later in a communication responding to Plaintiff's allegations of discrimination,

harassment and retaliation by Mr. Hermida.

37.    HR did recommend writing a letter of expectations and implement a performance improvement plan for Mr. Hermida following an email sent by Meredith Fergus on June 14, 2021, to HR, Deputy Commissioner Winnie Sullivan, and Assistant Commissioner Wendy Robinson informing them that in April and May 2021, Mr. Hermida had violated data practices procedures with regards to SLEDS data. Meredith Fergus was hopeful that leadership would give her permission to dismiss Mr. Hermida. Instead, HR recommended placing Mr. Hermida on a performance improvement plan, which again indicated a failure to provide prompt remedial action and related leadership hesitancy in dismissing Mr. Hermida.

38.    Meredith Fergus met with Mr. Hermida to discuss the resulting written reprimand for violating data practices and to let him know that a performance improvement plan would be developed, with the meeting supervised by Assistant Commissioner Wendy Robinson. Mr. Hermida's comments in the meeting were argumentative, hostile, demeaning, and disrespectful.  He again displayed his open discrimination to dealing with a woman who was a supervisor.

39.    Hearing that Mr. Hermida had filed another complaint against Meredith Fergus on top of the hostile work environment he was creating caused her to slide into an episode of major depression and anxiety. It was at this time that Meredith Fergus, prior to hearing the complaint allegations, informed Assistant Commissioner

Wendy Robinson of her resignation. Meredith Fergus felt that the hostile work environment created by Alex Hermida, and his continued use of the HR complaint process to attack Meredith Fergus would continue and the Defendant would continue to take no action to stop it. Assistant Commissioner Wendy Robinson asked Meredith Fergus to reconsider stating that she did not want to lose Meredith Fergus as an employee and manager. Meredith Fergus decided to stay at her job and informed Assistant Commissioner Wendy Robinson of this decision. AC Robinson stated that she would allow her to rescind her resignation.

40.    In an effort to further discredit Plaintiff and placate Mr. Hermida the Defendant issued a specious so called letter of expectations. Assistant Commissioner Wendy Robinson issued Meredith Fergus the letter of expectations on July 20, 2021. Meredith Fergus was still experiencing a major episode of anxiety and depression. Meredith Fergus had started medication for anxiety and depression at the end of June. She had also been approved for a reduced work schedule under FMLA at the end of June. Her medical problems were attributed to the hostile work environment.

41.    Meredith Fergus was not asked about nor was she given the option to refute some of the allegations during the investigation. Furthermore, Meredith Fergus was never asked by the investigator about some of the charges mentioned in the letter, such as bad-mouthing others. When Meredith Fergus asked about

examples of the behavior, Assistant Commissioner Wendy Robinson provided a general statement of "someone said you said something bad about Steve [Rogness]". Meredith Fergus believes the situation referenced is someone's misunderstanding.

42.     Mr. Rogness, a research analyst on Meredith Fergus's team, had a personal/family crisis in January/February 2021 and Meredith Fergus had asked other staff to step in, take work, and assist with work because he was struggling emotionally, personally, and professionally. Meredith Fergus did not disclose Mr. Rogness's personal situation when asking staff to do this. Meredith Fergus had also spoken with Mr. Rogness about asking staff to assist him at the time.

43.     The allegations against Plaintiff were not "timely" by the Defendant. In an August 2021 conversation with Assistant Commissioner Wendy Robinson, Meredith Fergus asked if the investigator had established when she was supposed to have done the "behaviors" indicated in the letter. Meredith Fergus stated that she had conducted herself with professionalism as requested since the July 2020 letter of expectations was received and inquired whether the investigation had differentiated between behaviors occurring before or after July 2020. Assistant Commissioner Wendy Robinson replied that she did not know and would need to review the complaints. To date, Assistant Commissioner Wendy Robinson has not provided additional information regarding the timing of the alleged incidents mentioned in the complaints. Without knowing this information, it appears that OHE

management could be reprimanding Meredith Fergus twice for the same incidents with escalated consequences.

44.   The allegations in the complaint did not indicate a pattern of behavior by Plaintiff.   To Meredith Fergus's knowledge, only two of the charges of the investigation were even questionably substantiated. After operating for months in a hostile work environment under tremendous stress with no appropriate action to relieve the situation, Meredith Fergus acknowledged by firmly responding to a staff member who interrupted her twice during an online meeting. Meredith Fergus also acknowledged using the term "slave labor" in a expressing her disapproval of management delays in approving pay for department interns. The "slave labor" complaints were filed by 6 months after they occurred and only after Hermida reinstated his harassment campaigns. These incidents were one-time incidents, not indicative of patterns of behavior as the OHE response indicates.  These remarks arose by the stress caused by the terribly toxic work environment maintained by Defendant and its failure even after repeated reports by Plaintiff of the Defendant to take no appropriate and timely action to correct the situation.

45.   Meredith Fergus was generally very respectful and regularly said thank you to people after receiving information from them.  The Defendants in an effort to spin the situation used Plaintiff's regular habit of saying thank you to her boss and others as a sign a politeness to later claim that she accepted the content of the letter

of expectations.

46.    At a meeting with the Assistant Commissioner Plaintiff was feeling deeply depressed. She was having a problem concentrating and extremely anxious. Plaintiff was polite and respectful during the meeting but stated to Assistant Commissioner Wendy Robinson that given her mental state she was unable to process this information fully at the time, that she would comply with the request to take training in the specified areas but would need to have a follow-up meeting to discuss the letter contents in further detail.

47.    Information received by Plaintiff after the so-called investigation by the state indicated the complaints against her were coerced. After the forgoing meeting between Assistant Commissioner Wendy Robinson and Plaintiff, members of Meredith Fergus's team have come forward indicating that Mr. Hermida placed pressure on them to file complaints, stated that staff reported being told they were traitors and supporting racism if they did not file complaints. Furthermore, one staff member stated that the interns involved were not informed/misled by Mr. Hermida of the content of the Respectful Workplace policy and its note to pursue discussions with colleagues before seeking to file a complaint.

48.    For example, Steve Rogness, Research Analyst stated:

*"there was a point I was trying to figure out if I had ever been specifically directly asked, like, and like not asked like Steve are you going to [file a*

*complaint against Meredith]? But like Steve I [Alex Hermida] want you to file a complaint, will you do that for me? That kind of a thing and I don't think it ever got that specific... but yeah there was pressure, there was pressure."*

49.     Information was also received by Plaintiff that after the investigation that the staff felt Meredith Fergus's reactions were the result of overwork assigned by leadership.  Furthermore, two staff stated that they informed the investigator that OHE leadership had assigned too much work to Meredith Fergus and the department and failed to provide adequate resources to complete the work assigned. They stated that this "overwork" was a significant factor in the department's ability to function, and Meredith Fergus's inability to adequately supervise and interact with her team.

50.     Since March 2021, Assistant Commissioner Wendy Robinson has re-assigned projects originally assigned to the Research department, after assessing that Research did not have adequate staff to complete the work (even prior to recent staff departures).

51.     In a continuing effort to cover up the hostile work environment and effort to overload Plaintiff with work in retaliation for resisting and reporting the discrimination the Defendant created the fiction that it is OHE leadership's assumption that the external facilitator's sole purpose is to "address issues identified in the investigation and repairing and rebuilding relationships within the team." In an October 14th phone call with the facilitator, Meredith Fergus asked specifically

if the intent of the facilitator's work was to "fix her issues", the facilitator said "no that it not what was communicated to her". Meredith Fergus also spoke with the facilitator about the need to rebuild trust between OHE leadership and the Research department as staff and Meredith Fergus felt OHE leadership did not provide adequate support during the most recent year and continued to assign work without acknowledging department's lack of capacity to complete additional work.

## HOSTILE WORK ENVIRONMENT

52.    Mr. Hermida had a pattern of discriminatory and harassing behavior against female and transgender colleagues for which OHE leadership was aware but did not properly address.

53.    During 2019, 2020, and 2021, Mr. Hermida had several incidents involving female colleagues for which he was subject to correction (documented in performance reviews, enrolled in communications classes). These behaviors included:

- **Providing overly negative criticism to female and transgender colleagues, including Meredith Fergus**

  o Veronica Deenanath, Senior Evaluation Specialist "the equity committee conducted a climate survey and Jia [Jia Mikuls, female, OHE Research] and Lain [Lain DeSalvo, transgender, OHE Grants] were leading this project, they, at that meeting

they shared some preliminary findings.  Mr. Hermida and Plaintiff were asking questions, but part of it was that his approach to asking the question was very much demeaning. The words he used, part of it was the way he was asking the question, but he wasn't really asking questions he was making statements.  Jia and Lain had put so much space into this survey and what happened was that he came in and discredited all of their work." – This incident involved at least 10 members of OHE staff, and was discussed in depth with the Deputy Commissioner.

o   Nicole Whelan and Meredith Fergus met in fall 2020 and role played how she should respond if she needed to give Mr. Alex Hermida feedback which could result in a negative reaction from him. Meredith Fergus and Ms. Whelan also role played how to deal with a situation in which Mr. Hermida was not complying with work that she needed him to do on a project she was managing. Meredith Fergus discussed this request with Deputy Commissioner Winnie Sullivan during a check-in meeting.

- **Belittling the feelings and contributions of female and transgender colleagues, including Meredith Fergus**

  o   Steve Rogness, Research Analyst "I thought he behaved unprofessionally towards Jia, it was an ageist, sexist thing." He talked about how young she was and implied that she didn't have her act together because she was always late.  Mr. Rogness pointed out  ".. it was a constant ribbing of Jia…I was like what is going on here, it was not good…. there was pattern [of behavior] from Alex that made me uncomfortable."

  o   Veronica Deenanath, Senior Evaluation Specialist "it was very belittling the way he was talking about [Jia Mikuls and Lain DeSalvo], like you should have known better."

- **Reacting defensively to input from female and transgender colleagues, including Meredith Fergus**

  o   Anne Sheridan, IT Manager "I met with him regarding those [projects] a couple of times, I know that as he was trying to articulate what he wanted, and if I would interject and ask a question, that was, he did not appreciate that, when I was seeking clarity, he really just wanted to pound his answer and

how it was going to be and sometimes it was just a basic it doesn't work that way we need to rethink how you want this to function, that's just not the way our analytics work, and it didn't go over really well."

o   Veronica Deenanath, OHE Evaluation Specialist "the very much elitist mentality that he had, approached it, there was always a right way, rather than trying to see things as complex or dynamic, or being able to accomplish things in multiple ways, particularly with data, there are certain things I agree that there is one way of working with data but data is not the truth, there is a lot of ambiguity and he didn't seem to understand that part."

o   Meredith Fergus notes that whenever she provided feedback to Mr. Hermida, he frequently blamed his performance on her communication inadequacies or her failure to provide him with adequate training (even after 3 years). Assistant Commissioner Wendy Robinson witnessed this feedback. Meredith Fergus was forced to provide Mr. Hermida with detailed written instructions for each project. When noted that he did not complete the instructions, he would argue about the clarity of

the instructions or simply not respond at all. Most tasks required 3-5 reviews before all components were completed as requested.

- **Refusing to acknowledge that his comments made to female and transgender colleagues, including Meredith Fergus, had caused harm**

  o Veronica Deenanath, OHE Evaluation Specialist "so there is a professor, his name is Raj, downstairs at metro he has an office there, somehow Marcio (OHE STAFF) connected with him, and he volunteered his time to lead some restorative justice circles to talk about what had happened [in the equity committee/climate survey blow-up], I believe there were two conversations, it was very awkward with Alex in the room to share information, I don't feel like it was the same with me, at least it didn't seem like that with me, people were able to share with me, but for him, there was some resistance… it was just like his approach to feedback was like you guys did a horrible job, why would we use it, you should squash all of this… very much blaming than trying to understand and providing feedback to improve."

- **Confronting female colleagues, including Meredith Fergus, in enclosed spaces and attempting to pressure them to agree with his opinions and perspectives**

  o Jia Mikuls, former OHE staff, made a verbal complaint to me in 2019 that he had confronted her after a Tuesday morning team meeting and wouldn't let her leave the area as he repeatedly explained to her why he felt he was right in giving her negative feedback and tried to pressure her to agree with him.

  o Meredith Fergus notes that Mr. Hermida would often knock and begin to talk about a prior conversation or feedback received; if informed that Meredith Fergus did not have time to discuss it, Mr. Hermida would frequently refuse to leave stating that "it would only take a minute" and accusing Meredith Fergus of being uncooperative.

- **Taking over meetings led by female staff and derailing work being done**

  o Karen Millette, Minnesota Department of Education staff (working on the interagency project "SLEDS" with Meredith

Fergus) "you'd try to get the meeting going and it would be derailed [by Mr. Hermida]. I thought it was always derailed, he did not help it move forward. I was in definitely in control in the meetings. And then somewhere all of a sudden, I was almost going to contact you Meredith and go did you talk to him about what he should be doing, all of sudden it switched, and he started taking control in the middle of the meetings and I was still confused about what was happening. So, you know I was not playing secretary, I was the one setting up the meetings, setting up the agenda, getting that kind of stuff going, and then all of a sudden, Alex would come into the meeting and later in say here's what we're doing, and take over."

- **Being unprepared for meetings and assuming female staff would pick up the slack**

    o   Karen Millette MDE SLEDS "a big part of project was spent educating special education on how we could those filters [reports], how they could be implemented, how they could aid them, and it was just trying to … that was what a big part of the meeting became…I really don't think he really had an idea of what each person's purpose was [in this project]. What was I

24

there to help with? What was Jen V there to help show how it had been implemented? No idea of how to use the people and the expertise that was sitting in the room."

- **Attempting to get female staff to do work assigned to him, refusing to do work or participate by manipulating staff, including Meredith Fergus**

  o OHE Manager Betsy Talbot supervised a meeting between Meredith Fergus and Mr. Hermida in June 2021: "Alex expressed concerns about his ability to perform his work due to stress and tiredness but noted that if he continued to take time from work, his workload stress would just get worse. He seemed to be fishing for Meredith to find solutions to his problems and did not seek to work with Meredith to find solutions to his inability to complete his projects (or he was just interested in complaining (borderline whining) about having to do his work). Alex was not solution-focused on his meeting with Meredith and that his relationship had devolved into parent-child relationship where Meredith had to take a parent-like role with Alex."

o   Cindy Hardell, IT "he didn't seem like he was engaged [in meetings I was in]"

o   Karen Millette, Minnesota Dept of Education "that was my main thing, as a participant he was not a helpful participant [in meetings I led]"

o   Anne Sheridan, IT "in the between times in the meetings he was supposed to have some pieces done for me to see, to illustrate what he wanted, and that was never followed up and done. And then I got the feeling that he wanted me to take that over and do it. And I know that wasn't my part of the project and I said no you need to, here's what you need to provide IT with, and he should have known as being part of all these other reports we've done."

o   Several times Mr. Hermida was made insubordinate comments or took insubordinate actions. In a 2018 meeting with the Educational Attainment committee, Meredith Fergus pulled Mr. Hermida aside and asked him to start the meeting promptly at 9am. Mr. Hermida's response was to announce to attendees that the meeting would start at 9:10 so that more attendees could arrive. After the meeting, when Meredith Fergus asked

him if he would done that if the Commissioner had asked him, Mr. Hermida replied that no he would not have. Mr. Hermida gave no explanation as to why he had done it.

o   In order to get Mr. Hermida to increase attention to detail and increase quality of the work he did, Meredith Fergus frequently had to resort to:

1.   Making comments such as "is this work ready to go to the Commissioner? Is it Commissioner-worthy?" The Commissioner was a male. After the comment was made, Mr. Hermida would redo the work.

2.   Providing detailed written instructions and reviewing work 2-3 times pointing out the instructions that were missed.

Both of these behaviors were witnessed by Assistant Commissioner Wendy Robinson.

- **Bad mouthing Meredith Fergus and her management and supervision of the Research department**

o   Steve Rogness, Research Analyst talked about the situation with Alex Hermida and in it he referred to Plaintiff as you. He

stated to Plaintiff: "in terms of complaining about things with you, yes [he did that] … there's the big picture, like he wanted you to not be our manager and he was talking to people about that. Yes, things that happened with you or things you said, he would complain about those to me, yes. And actually, one part of my not able to trust him was and I guess it was more about trust and his level of reaction, I remember how seriously he complained to me when you texted him outside of his work hours. And that one, I talked to other people about it, and no, that one doesn't work for me at all, you know, like, first of all, you are very respectful about people's work hours, very respectful, and it's just not unreasonable for our work for people to be contacted on an occasional basis. I was like, oh so other things Alex is telling me I'm always going to need to know the specifics in order to judge whether or not this sort of like complaint or something that happened is going to be like valid."

- **Filing complaints against Meredith Fergus but not against male colleagues**

o   In 2020 Mr. Hermida filed a complaint against Meredith Fergus charging that she had yelled at him. During the 2019 incident in which Mr. Hermida provided belittling criticism to the female and transgender staff on the equity committee, a male staff yelled at Mr. Hermida during a restorative justice meeting to address the incident. Mr. Hermida did not file a complaint against the male staff.

- **Female colleagues, including Meredith Fergus, found Mr. Hermida difficult to work with**

  o   Assistant Commissioner Wendy Robinson "many people find him difficult"

  o   Veronica Deenanath "I really tried hard to cultivate a relationship with him, we had one lunch together, but he was very much closed off and didn't really interact even when we would pass each other in the hallway and say hello and that, he just would not interact."

54.   Staff indicated the stress and hostile environment caused by Mr. Hermida and the department workload had a negative impact on Meredith Fergus and her ability to manage the department.

- Sally Krager, Intern/Temp Research Analyst, *"We could feel your stress to be dead honest, we could feel your stress and I think it affected all of us even though we're online but we're still a unit."*

- Sally Krager Intern/Temp Research Analyst: *"it's frustrating because I feel they [the investigator] never addressed anything with me, basically I had 5 minutes with some random guy, and that's all I ever got in any information from anything whatsoever, and that's what basically what I told him. It is obvious from an outsider's point of view coming in that there is zero accountability on senior leadership, zero."*

- Assistant Commissioner Wendy Robinson talked about the workplace with Plaintiff and in it she referred to Plaintiff as you.  She stated: *"my perception from having read their [Steve Rogness and Nicole Whelan] portions of the investigator's report was a lot of their concern around you as a manager was about how thin spread you were, and some of the things that maybe they pointed out was like their concerns were, I put under the "when you are spread too thin" the ways that manifests itself is you know x,y,z, and behaviors around attention during meetings, and so I've been worried this fall because we've been short staffed, but you guys are getting through some things, and trucking*

*along… some of what I'm trying to do behind the scenes is to keep things off your calendar that don't really need to be there."*

55.   Since Mr. Hermida's departure in July 2021, staff have commented on Meredith Fergus's and the department's improved environment

- Sally Krager, Intern/Temp Research Analyst talked to Plaintiff about the work enviroment since Hermida left and in it she referred to Plaintiff as you.  She stated: *"I can tell things are different, things are much different, you feel happier, you feel like a much happier manager, in talking to you, I can just tell that you have a sense of relief that you haven't had in a long time and that makes me feel better in working with the team."*

- Assistant Commissioner Wendy Robinson talked to Plaintiff about the situation after Hermida left. In that conversation she referred to Plaintiff as you.  She stated: *"I will say it's an interesting time because primarily the ways I observed you in your management capacity previously were in your interactions with Alex and like those were a whole thing. I would say that our interpersonal, our 1:1s, my perception is that you seem like you're in a better place, emotionally and professionally, in terms of where you feel where you are at with your team, that all seems markedly more positive than when I first*

*started, so I kind of work under the assumption that probably*

*translating into how you are interacting your folks and that that's*

*moving in the right direction and the experience you are having with*

*them."*

56.     Meredith Fergus was denied the opportunity to compete for a promotion.  In June 2020 (after Mr. Hermida filed his first complaints and prior to the investigation concluding), Meredith Fergus applied for a promotion to the position of Assistant Commissioner for Policy, Programs, and Grants. Meredith Fergus met all of the minimum criteria for the position which was posted for internal candidates only. Meredith Fergus was not granted an interview. When Meredith Fergus expressed her concern to Deputy Commissioner Winnie Sullivan about herself and two other staff, not being granted interviews, Deputy Commissioner Winnie Sullivan was dismissive. When Meredith Fergus further stated that she felt it was important to let staff be given the chance to sell themselves because having been promoted twice before without interviewing, she missed the chance to sell herself. Deputy Commissioner Winnie Sullivan said something to the effect of "maybe you never should have been promoted in the first place."

57.     Meredith Fergus was denied needed resources to protect herself from Mr. Hermida's behavior.  Mr. Hermida went on Family Medical Leave in June 2020 and returned in December 2020. Prior to his return, Meredith Fergus spoke with both

Deputy Commissioner Winnie Sullivan and HR that she was scared about Mr. Hermida's return given his escalating negative behavior prior to leave. Meredith Fergus discussed her concerns with another OHE manager, Ms. Betsy Talbot, who recommended she seek to have only supervised interactions with Mr. Hermida. Supervised interactions involved another HR or manager sitting in on all meetings where Mr. Hermida and Meredith Fergus were present. Ms. Talbot had been granted supervised interactions during a prior period in which she was dealing with a hostile employee under Deputy Commissioner O'Connor. During a weekly check-in in November prior to Mr. Hermida's return from leave, Meredith Fergus requested Deputy Commissioner Winnie Sullivan give her permission to have managers supervise her interactions with Mr. Hermida. Deputy Commissioner Winnie Sullivan informed Meredith Fergus the other managers and HR staff were too busy to accommodate such a request.

- Betsy Talbot, OHE Manager: *I was* subject *to an investigation in 2017 from an employee that I supervised. That employee initiated the complaint process after repeated emails to my supervisor and HR about all of that employee's perceived slights by myself and all of the things the employee did not like about me. When I requested supervised conversations with that employee, my supervisor granted that request. My supervisor or another manager was made available*

*for any one-on-one conversations that I had to have with that employee (all conversations, not just conversations that were about employee performance).  When the employee made a union complaint, HR and my supervisor provided support through that process, including taking the lead to respond to the complaint and refute that employee's complaints.  I was supported with:*

 i. *the meetings with the employee and their union representation*

 ii. *EAP sessions with this employee*

 iii. *drafting a letter of expectations for the employee*

 iv. *drafting communications to the employee*

 v. *the process to fire the employee*

*I was never left unsupported by my supervisor (Diane O'Connor and then Winnie Sullivan) and HR through the process.  I was told that it was their role to support managers during an employee complaint and that it was within my manager authority to provide constructive feedback to my employee and that many of the things that the employee was seeking as remediation of his complaint were not acceptable (like requesting a different supervisor).*

58.   In late fall 2020, Deputy Commissioner Winnie Sullivan decreased the

amount of time she was scheduled to meet with Meredith Fergus from 30 minutes per week to 30 minutes every other week. Meredith Fergus felt increasingly isolated, depressed, and anxious, with little to no support from OHE leadership in dealing with Mr. Hermida's escalating behavior. Upon the hiring and start of Assistant Commissioner Wendy Robinson in March 2021, Assistant Commissioner Wendy Robinson reinstated weekly check-ins of 60 minutes with Meredith Fergus, immediately implemented supervised meetings upon review of Mr. Hermida's behavior, as Meredith Fergus had previously requested.

59.     OHE leadership increased the workload of Meredith Fergus and her team, despite concerns raised by Meredith Fergus, increasing stress and the limiting Meredith Fergus's ability to adequately protect herself from or respond to Mr. Hermida's behavior.  During the 2017-2021 time period, the workload for Meredith Fergus's department increased substantially, over the objections and concerns of Meredith Fergus, in response to new programs and projects being assigned to the Research department. The increasing workload and increasing hostile activity of Mr. Hermida combined to place unreasonable pressure on her personally, and on her ability to supervise her staff. This was brought to the investigator's attention but not referenced in the Letter of Expectations in July 2021.

- Sally Krager Intern/Temp Research Analyst: *"[In the complaint and investigation] I focused on the lack of resources from upper*

*management, basically that there was no way you [Meredith Fergus] could spend time with me as you were as busy as you were. I literally remember saying to him, I can't even make an appointment with her because her calendar is that full. That's not how you enable a manager to be a manager."*

- Sally Krager Intern/Temp Research Analyst: *"you were distracted Meredith I don't, in hindsight, with everything now that I know, cause I didn't know everything, I did bring it up a couple of times but with everything that was going on, you were very distracted, and I don't blame you for that, I blame the organization."*

60.     The complaints against Meredith Fergus were Mr. Hermida's continued discrimination, harassment and retaliation.  He retaliated against Plaintifff after being denied leave and a poor performance review.   HR staff supervised Mr. Hermida's 2020 performance review meeting in December 2020 after his return from leave. Mr. Hermida was defensive, hostile, and attacked Meredith Fergus verbally for her review of his performance. In December 2020, Mr. Hermida also requested that he be allowed to take advantage of "salary savings leave". Salary savings leave could be used by departments to allow staff to reduce work hours in order to reduce agency costs. The policy required managers to state that a reduction in hours would not negatively impact the capacity of the department. As Research

was behind on projects due to Mr. Hermida taking 6 months parental leave and the increased project workload, Meredith Fergus declined Mr. Hermida's request. These two incidents increased Mr. Hermida's discriminatory and retaliatory behavior towards Meredith Fergus. Meredith Fergus noted on page 3 of the 2020 performance review that Mr. Hermida does not respect the feedback she gives him and is viewed as an obstacle to be overcome.

61.     Mr. Hermida's presence caused anxiety and stress for Meredith Fergus and other Research staff

- Sally Krager, Intern/Temp Research Analyst: *"like I told Wendy, I just, it's, the thing that make me maddest is that there are real issues with, you had too much to do, and the research team was struggling, and when he [Mr. Hermida] came in, everything got lost in that, in him, and everything we needed to be a better team just got forgotten about because of him, it took up so much of people's energy and it made it worse, so much worse."*

62.     Mr. Hermida began a campaign to get Meredith Fergus fired through constant criticism and attacks that undermined her ability to supervise her team and complete her work.  Beginning in March 2021, Mr. Hermida's behavior escalated in that he began contacting HR and Assistant Commissioner Wendy Robinson whenever he determined Meredith Fergus had been unreasonable in a request or had

done something that he thought he could use to bring disciplinary action against her. Meredith Fergus was required to frequently defend her management and project decisions and compile multiple and detailed written responses to the comments made by Mr. Hermida. Meredith Fergus also had to step in multiple times and mediate conversations between Mr. Hermida and other OHE staff when Mr. Hermida stated he could not get work done as directed by Meredith Fergus. Mr. Hermida also threatened to embarrass Meredith Fergus professionally in public meetings by making these comments.

63.     The 2021 so called investigation targeted Meredith Fergus thus failing to investigate or document the hostile work environment created by Mr. Hermida or seek a positive resolution to the situation.  During the 2021 June investigation, staff noted that the investigation was focused solely on finding blame with Meredith Fergus and failed to investigate, acknowledge, or resolve the hostile work environment created by Mr. Hermida and the lack of leadership support.

- Nicole Whelan, Senior Research Analyst: "I was just like very frustrated because you're [the investigator and OHE leadership] clearly not trying to resolve something, clearly its unresolved and it needs to be resolved, and that's the point."

64.     Defendant state of Minnesota is a governmental body that employed people who had supervisory control over both Plaintiff and Mr. Hermida who was

her subordinate. One of these supervisors was a deputy commissioner.

65.     Plaintiff's supervisors including a deputy commissioner of the state of Minnesota under color of law subjected, or causes to be subjected, Plaintiff who was a citizen of the United States within the jurisdiction thereof to the deprivation of her rights, privileges, or immunities secured by the Constitution and laws of the United States and the state of Minnesota in violation of the First, Fifth and Fourteenth Amendments.

66.     The conduct of Defendant including it covering up of gender discrimination, harassment and retaliation by Mr. Alex Hermida and the resulting hostile work environment maintained by Defendant have had negative financial consequences and emotional impact on Meredith Fergus.   Plaintiff has been punished for resisting and reporting gender discrimination against her while employed by the state of Minnesota which is a governmental body.

67.     Performance reviews and complaints of employees of Defendant are accessible by hiring managers within any agency of the State of Minnesota. The presence of complaints resulting from coercion by Mr. Hermida and the falsely negative approaches displayed by Defendant have and will negatively impact Meredith Fergus's ability to be promoted or change jobs within the State of Minnesota. The failure to promote or even give an interview was a violation of the Fifth Amendment.

68.    The employment relationship between Plaintiff and State of Minnesota requires a greater obligation by the employer State of Minnesota to refrain from inflicting mental or emotional distress than would apply to a relationship between strangers. State of Minnesota had a discriminatory bias against Plaintiff because of her gender.

69.    While working for State of Minnesota Meredith Fergus experienced being the target of gender discrimination by an employee Alex Hermida and her employer.

70.    The person she supervised Alex Hermida and her employer her employer condoned by State of Minnesota's Human Resources.

GENDER DISCRIMINATION

71.    The Plaintiff hold the position of manager of the research department at the Office of Higher Education (OHE).  She had a person Alex Hermida a male person who she was to supervise as part of her job.  He acted in a gender discriminatory manner and  treated Meredith Fergus in an unprofessional and disrespectful manner that has damaged Meredith Fergus.  Alex Hermida made it clear through his comments and actions that he did not intend to follow directions from Plaintiff because of her female gender.

72.    Alex Hermida had a pattern of repeated and continuous gender discriminatory behavior toward Meredith Fergus, as well as negative **sexually**

**harassing** behavior against female and transgender colleagues during his employment at the Office of Higher Education (OHE) of which Plaintiff's superiors at Defendant was fully aware. During 2019, 2020 and 2021, Alex Hermida had several incidents involving female colleagues for which he was subjected to correction for his bad conduct as evidenced in his performance reviews. These behaviors include, but are not limited to:

- Providing overly negative gender discriminatory criticism to female and transgender colleagues including Meredith Fergus.

- Belittling the feelings and contributions of female and transgender colleagues including Meredith Fergus.

- Reacting defensively to input from female and transgender colleagues including Meredith Fergus as part of his gender discrimination against female persons.

- Refusing to acknowledge that his comments to female and transgender colleagues including Meredith Fergus caused harm. These were gender discriminatory.

- Confronting female colleagues including Meredith Fergus occurring in enclosed spaces and attempting to pressure them to agree with his opinions and perspectives and to make false claims against Meredith Fergus.

- Taking over meetings led by female staff and derailing work being done as part of his gender discriminations.

- Being unprepared for meeting and assuming female staff would pick up the slack because of gender discrimination.

- Attempting to get female staff to do work assigned to him, refusing to do work or participate by manipulating staff, including Meredith Fergus.

- Unfairly, discriminatory and maliciously bad-mouthing Meredith Fergus and her management and supervision of the Research Department.

- Filing false and gender discriminatory complaints against Meredith Fergus but not against male colleagues.

- Female colleagues, including Meredith Fergus, found Alex Hermida difficult to work with because of gender discrimination.

- Using coercion to get employees to complain about Meredith Fergus.

73.    Plaintiff Meredith Fergus did everything possible to act professionally to stop the gender discrimination but her employer the Defendant did not act in a proper and prompt manner to take remedial action to stop the discrimination.

74.    Alex Hermida out of gender discrimination created a hostile work environment which in turn created a negative impact on Meredith Fergus and her

ability to manage the department. Throughout his course of employment Alex Hermida created a gender discriminatory smear campaign in an attempt to remove Meredith Fergus from the job through constant criticism, pretextual and continuous lying. A 2021 alleged investigation by the state of Minnesota only targeted Meredith Fergus and failed to investigate or document the hostile environment created by Alex Hermida.   This investigation did not allow due process. His discriminatory, harassing and retaliatory presence caused anxiety and stress for Meredith Fergus and other research staff.

75.   Alex Hermida displayed comments in meetings that were argumentative, hostile, demeaning and disrespectful toward women.  His behavior did show patterns of misconduct, harassment, and gender discrimination but again was not investigated by Defendant.  Staff commented their negative perception on Alex Hermida and when he was no longer employed there the work environment was described as more calm and a much peaceful happier place with a sigh of relief.

76.   Alex Hermida did not take orders in a professional manner from his superior Ms.  Meredith Fergus because of gender discrimination.  There were numerous occasions regarding the gender discriminatory behavior of Alex Hermida and how he was  insubordinate to his female superior the Plaintiff. His insubordination caused a disruption in the workflow and affected the morale of other employees. It affected his manager Meredith Fergus professionally and personally.

77.   Instead of Defendants taking prompt remedial action to stop the gender discriminatory conduct by Alex Hermida they went after Plaintiff the victim.  The inappropriate reprimand Meredith Fergus received due to the behavior of Alex Hermida did materially alter the terms of her employment and possible future employment within the State. This was allowed to happen due to an employee who discriminated against a female manager whom he had no interest in cooperatively and productively working with or under because of her gender, so instead plotted a plan to discriminate against,  harass, humiliate and bully the plaintiff Meredith Fergus until she quit herself or was fired.

78.   Alex Hermida was not just discourteous but rather intentionally refused to follow directions of his supervisor Meredith Fergus who was a female.  He did this as a male subordinate out of gender discrimination.  This conduct was repeated and continuous causing not only a disruption of the workplace but an extremely hostile work environment for Meredith Fergus.

79.   Hermida did not listen to what Plaintiff said. Finally in trying to get through to him she raised her voice and told him to "just do it." Defendants have held Plaintiff's exercise of her right of free speech under the First Amendment against her.

80.   The state of Minnesota acted in a discriminatory way in dealing with Alex Hermida's conduct.  It took the position that discrimination by a subordinate

of a supervisor is not a violation of Minnesota law and federal law. Plaintiff as a supervisor has no less right to be protected against gender discrimination than a subordinate. To do that would be a denial of equal protection under the law and the State in doing so also violated her right to due process.

81.    The Defendant state failed to protect Plaintiff as an employee against discrimination. The defendants knew or should have known of the discriminatory offensive behavior; and failed to take immediate and appropriate corrective action.

82.    It is especially egregious in the instant situation since the employer the state of Minnesota (1) failed to reasonably act to prevent and to correct the discriminatory conduct; and (2) the discriminating employee unreasonably failed to even after being warned by Meredith Fergus of his bad conduct take corrective action to avoid harming her and others. To the contrary the subordinate continued his conduct and used coercion to get other employees to make false claims about his supervisor to further his gender discriminatory acts.

83.    Meredith Fergus who was being discriminated against because of her gender and did everything in her power to stop it, including addressing concerns properly to both Alex Hermida and her supervisors and repeated calls for help to her superiors but nothing was properly addressed by the State. There was nothing more she could do. In other words, she did not have the ability to stop the discrimination and the employee subordinate got support for his actions by the employer.

84.    Although Plaintiff reported to her superiors about Alex Hermida's discrimination, harassment and retaliation it failed to properly address it, but allowed it to continue.  The State as the employer it had the duty whether or not he was a subordinate of Plaintiff a duty to stop the harassment regardless of what action the victim could have taken herself.  In the instant case Meredith Fergus did do everything within her power to stop the harassment and related gender discrimination.

85.    The Defendant state of Minnesota knew of the discrimination, harassment and retaliation directed at Plaintiff by a subordinate Alex Hermida and failed to implement prompt and appropriate action.  Meredith Fergus repeatedly tried to end the gender discrimination but was not successful because of the failure of the employer the state of Minnesota to do its duty to take prompt remedial action.  It instead emboldened the subordinate to continue his gender discrimination.

86.    The Defendant employer knew of Hermida's discrimination directed at Plaintiff and failed to implement prompt and appropriate action.  In this case, the employer repeatedly had notice of Hermida's gender discrimination and related misconduct, which were the basis for his eventual termination that was far overdue. Despite knowing of the damage out of gender discrimination harassment and retaliation, he had done and was doing the employer failed to take prompt remedial action.  Plaintiff tried but did not have the ability to stop the discrimination and

harassment, which was known to the employer, but it still failed to protect her.

87.   Meredith Fergus is (a) a member of a protected class; (b) She is qualified for her position with the State of Minnesota as well as higher positions; (c) She has suffered adverse employment actions as set forth below; and (d) the adverse actions occurred under circumstances giving rise to an inference of discrimination. Meredith Fergus received different and worse treatment because of her female gender with respect to compensation and chance for advancement. State of Minnesota by its discriminatory acts have substantially decreased her earning potential and caused significant disruption in her working conditions, which was a tangible adverse employment action.

88.   Plaintiff is qualified for the position she holds and to had superior knowledge of job requirements than the person she supervised Alex Hermida.

89.   Despite her extensive experience and education as a female person she was continually and repeatedly treated differently and worse by Defendant than was warranted while Alex Hemida who she supervised was allowed to continue to discriminate, harass and retaliate against her.

90.   Defendant State of Minnesota discriminated against plaintiff, a female employee, with respect to the conditions, privileges, advantages and benefits of employment with defendant including but not limited to defendant maintaining separate and more favorable approaches to Alex Hermida a male employee and

denying plaintiff a female employee the opportunity of obtaining better conditions of employment, the design, intent, purpose and effect being to continue and preserve defendant's long-standing policy, practice, custom and usage of limiting the employment and promotional opportunities of female employees of defendant because of their gender.

91.     Defendant followed a policy and practice of Gender discrimination in employment against Plaintiff as a female person.  Under such policy and practice, Defendant State of Minnesota, through its agents and employees, repeatedly condoned Gender discrimination, harassment and retaliation against plaintiff because she attempted to obtain equal opportunity employment for herself and because she filed the aforementioned charges of discrimination with the equal employment opportunity commission.

92.     During the time plaintiff was employed by defendant State of Minnesota, said defendant discriminated against plaintiff with respect to the terms, conditions and privileges of her employment because of her gender in violation of section 703 (a) of Title VII of the Civil Rights Act of 1964, and the Minnesota Human Rights Act.

93.     Plaintiff's supervisors' oral statements demonstrated a discriminatory motivation in that it challenged her intelligence, honesty and treated her differently than her male counterparts.

94.    The aforementioned discrimination consisted of dissimilar treatment from employees of males including but not limited to unfounded complaints made by a male person she supervised concerning plaintiff's work; assignments by said supervisors to perform menial, demeaning duties, played pretextual games to set her up for failure, overloading her with work, making her do work for a male person people that he should have been required to do, undermining her in the eyes of her co-workers as well as people she supervised and other acts of harassment.

95.    Plaintiff has sought and continues to seek opportunities for advancement, but has been passed over for promotion based on false accusations by a male person who received favorable treatment because of his gender. Despite her excellent performance, experience and knowledge of her job she holds a lower title and lower income than male workers with less time at State of Minnesota, experience or knowledge. She has been denied due process by not even having a chance to have her complaints heard and investigated and denied a right for a promotion. Defendants did not properly recognize the problems Plaintiff was experiencing, investigate them, inform her of what they were going to do and instead used false claims against her to deny her the right to a promotion.

96.    Plaintiff has sought and continues to seek advancement at State of Minnesota without success and has been wrongfully denied promotion because of unlawful discrimination by State of Minnesota.

97.    Defendant State of Minnesota has consistently and purposely limited and deprived plaintiff of her rights under federal and state law with the intent and design to foster and protect the advantage and advancement of male employees to the detriment of plaintiff out of unlawful discrimination.

98.    Defendant State of Minnesota has followed a consistent policy, practice, custom and scheme of discriminating, overloading with work, trying to set up for failure, hounding, overly scrutinizing, harassing, and denying common consideration to Plaintiff who has sought equal employment opportunities.

99.    Defendant State of Minnesota has engaged in the oppressive course of conduct alleged herein intentionally, willfully and with full knowledge that its conduct was in derogation of the law and the rights of plaintiff.

100.   Defendant has followed a consistent pattern through the date of this complaint of discriminating against Plaintiff in terms of raises, recognition and promotion an denying her due process.

101.   Plaintiff as a female manager was not given adequate number of employees for work volume when data showed that additional employees were needed to handle the work load. State of Minnesota Office of Higher Education leadership re-assigned the male co-manager to research to "special projects" in 2019-2020 without adding additional staff and without taking into consideration the increased work load that Ms. Fergus was forced to assume. This caused her to have

to work far harder than her male counter parts.  The discriminatory workload, setting her up for failure and related treatment, discrimination, harassment and retaliation were traumatizing.  She has tried to block out the horrible unlawful and dehumanizing discriminatory treatment just to be able to cope.

102.   She was not backed by State leadership on staff management decisions while a male employee she supervised was allowed to discriminate, harass and retaliate against her.

103.   State of Minnesota made positive statements about Meredith Fergus' performance while acting inconsistently negative toward her which showed its discrimination toward Plaintiff.

104.   Despite her acknowledged skill, knowledge problem solving abilities, analytical skills, knowledge and management ability, State of Minnesota discriminatorily did not support her as a manager.

105.   Despite rising to the level of supervisor the Plaintiff was discriminated against by the management at State of Minnesota that did not take prompt remedial action to correct discrimination, harassment and retaliation against her, but instead condoned it.

### ONGOING DISCRIMINATION AND RETALIATION

106.   The bigotry and gender discrimination have made Plaintiff increasingly uncomfortable about reporting unlawful acts to her direct supervisor.  Resistance

and/or reporting discrimination causes retaliation by the Defendant.  This pattern and practice of discrimination was continued and repeated within 300 days of her filing her EEOC charge and has continued to the date of this complaint being filed.

### SOME EXAMPLES OF DISCRIMINATORY

107.   The State of Minnesota has and is continuing to discriminate and retaliate against Meredith Fergus, even after the male person she supervised who discriminated, harassed and retaliated against her Alex Hermida left.  She was forced to have a "coach" and was denied a promotion despite having no bad performance issues.  The State has further continued to fail to recognize that the problem is with its on-going discrimination, retaliation and related continuing failure to promote her despite her positive reviews.  Additionally, the State is continuing to overwork Meredith Fergus by reassigning AC Robinson to other positions and requiring Meredith Fergus to increase her job responsibilities.

### PREFERENTIAL TREATMENT AT STATE OF MINNESOTA

108.   Meredith Fergus a female was overly scrutinized and criticized for work done while male workers are given a free pass on even blatant problems caused by them.  Meredith Fergus was treated far different than other male managers including being overly scrutinized and criticized while she observed her male counterparts getting far different preferential treatment from what she received from the State of Minnesota.

109.   State of Minnesota assuming that the plaintiff a female person was not doing things correctly because her male subordinate Alex Hermida was complaining about her, while ignoring the basis for his complaints were driven by his gender discrimination directed at Plaintiff.  The Defendant discriminatorily assumed that Plaintiff was always wrong unless she could prove that she was not and even if she did the State of Minnesota's attitude was dismissive rather than positive toward her contributions to its success.

110.   Failing to fairly and thoroughly investigate accusations against a male person Alex Hermida.  State of Minnesota showed no concern for investigating complaints by her and made clear through its actions that any complaint by Plaintiff would be retaliated against by it.

111.   Despite Plaintiff's excellent work and contributions to the Defendant's success it refused recognition and promotional opportunities given to less qualified male workers.

### STATE OF MINNESOTA'S FAILURES

•   Failure to supply a discriminatory, harassment and hostile-free environment to females where they are treated fairly.

•   Show respect for Plaintiff's work and not be harassed because she was of a female person.  Meredith Fergus was discriminated against based on her gender.

- Have an environment free of discrimination, harassment, retaliation, derogatory and condescending comments directed by Mr. Hermida against female persons.

- Having a manager of Plaintiff work in a fair and respectful manner by among other things if a problem arises that (Plaintiff and her Manager) identify the problem and resolve them instead of her manager later making a false claim that Plaintiff who is a female employee did something wrong. Defendant used a blame the victim approach toward Plaintiff because she was a female person. She was falsely blamed for things that she had not done wrong because of her gender.

- If there is a problem, supervisors fairly investigate to seek the facts and not assume Plaintiff because she is a female is guilty as charged.

- Continuing to hold against Plaintiff problems caused by Alex Hermida's discrimination, harassment and retaliation.

- Maintaining a destructive approach to Plaintiff's career and failing to correct unfair acts directed at her arising out of Alex Hermida's discriminatory campaign to harm Plaintiff.

GENDER DISCRIMINATORY WORK ENVIRONMENT

112. Meredith Fergus has observed that State of Minnesota maintains a

gender discriminatory work environment where over and over she was forced to do her job while being subjected to discrimination, harassment and retaliation. When she tried to reason with her discriminatory tormentor Alex Hermida she was further harassed, discriminated and retaliated against. For example, she was given a false review after her supervisor and HR refused to take action and they discriminatorily blamed her for problems caused by her supervisor's and her direct manager's failure to act to take prompt remedial action to stop Alex Hermida from discrimination, harassment and retaliation against her.

113.   Defendant used discriminatory tactics to try to cause Plaintiff to have difficulties so as to criticize her, take adverse employment actions against her.  The employer then did not give the Plaintiff a reasonable basis for its adverse employment actions against her.

114.   The employer made her submit to conduct or communication that were known to be discriminatory as a term or condition of her keeping her job. Plaintiff has received different treatment from other similarly placed male employees at the workplace.

115.   Submission to or rejection of the offensive discriminatory conduct by her has been a factor upon which her employer based its decisions regarding her employment throughout the time she worked for it.

116.   Plaintiff has been made to feel unwelcome and incompetent and with

the purpose and/or effect of interfering with her employment and creating an intimidating environment throughout the time she has worked for State of Minnesota.

117.   Despite her excellent performance State of Minnesota did not promote her but instead held against her the problems she experienced with gender discrimination by Alex Hermida.  It was a continued form of gender discrimination within the workplace, regardless of whether or not she is receiving the same rate of pay and benefits and was an unlawful retaliation by it after her reports of discrimination and harassment.

118.   State of Minnesota with the aid of its employees, agents, managers, supervisors, officers, human resource personnel, employees and other agents intentionally did acts to interfere with Plaintiff's ability to do her job and move forward in her career.

119.   State of Minnesota made false accusations against Plaintiff and placed or had placed damaging documents in Plaintiff's employment file to induce or otherwise give a false basis to harm Plaintiff's career.   Defendant knew that its false accusations by it may have to be revealed to people interested in having Plaintiff work with them or in attaining a promotion within the State of Minnesota. Defendant's intentional acts caused damage that could prevent Plaintiff from getting a raise, getting promoted and could lead to her losing her job at the State of

Minnesota.

120.   State of Minnesota intentionally interfered with Plaintiff doing her job out of discrimination. The employer knew the importance of Plaintiff maintaining a good reputation as officer of the State of Minnesota and the need not to have false allegations related to her in the employment file. State of Minnesota did the foregoing acts to intentionally ruin Plaintiff's career and to make her unemployable to a prospective employer.

121.   State of Minnesota's foregoing actions stated earlier in this complaint forced and continue to force Plaintiff into a position where she was hampered in doing her job and was forced to answer questions about nonspecific false accusations against her by State of Minnesota without adequate time and information supplied by the State to deal with the situation.  Due process was denied Plaintiff because she was entitled to know the nature of her alleged misconduct or performance deficiencies (i.e. the charges against her); and she should have been given a reasonable opportunity to respond to those allegations before any decisions were made regarding imposition of discipline. The State of Minnesota disregarded properly informing her of what they alleged she had done wrong and just took Hermida's discriminatory slant on situations and without giving her a chance to defend herself imposed negative consequences on her amounting to an adverse employment action.  She was forced to work in a hostile work environment and

arising out of that came an adverse employment action.

122.   State of Minnesota repeatedly unlawfully abused the Plaintiff. It also allowed Winnie Sullivan to intentionally and discriminatorily assign Plaintiff tasks, including supervising Hermida, to set her up for criticism and failure. Her supervisor's discriminatory false accusations about her performance which caused her to become anxious, stressed, have repeated thoughts of the bad treatment she had received by her employer, have trouble sleeping, feeling depressed, anxious, under stress and severe mental and emotional distress to present.

123.   State of Minnesota subjected Plaintiff to a discriminatory, unwholesome, hostile, and abusive work environment where insults and related harassment were pervasive and the law was violated by State of Minnesota.  Plaintiff was made to feel very bad including but not limited to as though she was not equal to male employees and an outsider, unwanted at the workplace, considered less capable because of her female gender, not economically viable, a misfit, unable to communicate and incompetent.

FIRST CAUSE OF ACTION

GENDER DISCRIMINATION IN VIOLATION OF TITLE VII
42 U.S.C. § 2000E, *ET SEQ.*, AS AMENDED, AGAINST THE STATE OF MINNESOTA

124.   The Plaintiff re-alleges the previous paragraphs of this complaint that are incorporated herein by reference and are set forth herein.

125.   While working for State of Minnesota the Plaintiff was a victim of

gender discrimination.  Defendant treated Plaintiff as a female person differently and worse than it did male co-workers.

126.  While working for Defendant she was repeatedly and continuously discriminated, harassed and retaliated against by her subordinate Alex Hermida. This was known by her supervisors and HR at Defendant State of Minnesota.

127.  Despite HR knowing of Alex Hermida's gender discrimination it directed matters in such a way as to condone Mr. Herminda's gender discrimination and interfere with Plaintiff's supervisory role over Alex Hermida.

128.  Plaintiff was made to understand that Minnesota's own internal policy states that complaints cannot be made to HR to interfere with a supervisor's job. That is precisely what was done by Dr. Alex Hermida.  He had a discriminatory prejudice against being supervised by a woman, namely the Plaintiff.

129.  In order to further Hermida's discrimination and harassment based on her gender he made or caused others to make negative reports to HR, management and other entities to interfere with his supervisor's (Plaintiff's) duties.  Further, he did acts of harassment directed against Meredith Fergus causing her problems at work and severe mental and emotional distress.

130.  His discriminatory, harassing and retaliatory acts made for a hostile work environment for Plaintiff to work in.  Alex Hermida caused Plaintiff damage both to her job and mental and emotional state.

131.   While the Defendant State claims to not want subordinates to interfere with a supervisor's duty, this precisely what it condoned.  It was aware of Alex Hermida's discrimination, harassment and retaliation and even told Meredith Fergus to document his problems so he could be fired, while at the same allowing him to discriminate, harass and retaliate against her and even worse supporting his false accusations.

132.   Alex Hermida went so far as to threaten other employees with labeling them as racist if they did not complain against Meredith.  He used coercion to get people to falsely make statements regarding Meredith and interfere with her ability to supervise him.

133.   While Alex Hermida's discriminatory acts toward Plaintiff interfered with work done on behalf of the citizens of Minnesota by Meredith, the State supported and condoned Alex Hermida and continued to employ him without repercussions to his status.  The State did not do a full investigation of Alex Hermida's actions against Meredith Fergus, and did not discipline him for his discriminatory actions.  Instead it focused on doing further harm to his victim, Meredith Fergus.

134.   Alex Hermida's performance appraisal's show negative below satisfactory performance and signed by the Deputy Commissioner.  Despite this fact the State allowed him to manipulate the process so his false accusations stood to

harm Meredith's career and he did not have any problems so he could be transferred to an affiliated organizational structure. That division is the Minnesota Council of Latino Affairs. That council to the best of Plainitiff's knowledge is designated as a part of the State of Minnesota. Please see https://mn.gov/mcla and the staff page https://mn. Gov/mcla/about-us/staff. On the home page it states: "MCLA is a state agency that advises the government on matters of interest to Latinos who live in Minnesota."

135. The Defendant State in its position toward Alex Hermida's conduct showed no interest in having quality work for its constituents. On the one hand, it admitted that Meredith Fergus is phenomenal technically while allowing Alex Hermida to interfere with her ability to do what was needed for the Defendant. The Commissioner at an all-staff meeting stated, in effect, that OHE is nationally recognized because of the work done by Meredith Fergus.

136. Plaintiff's supervisors and HR denied her the authority to terminate her subordinate employee Alex Hermida and allowed the hostile work environment to persist.

137. Instead of directing its attention to removing Alex Hermida from the work force it instead retaliated against Meredith Fergus by making her the focus of an investigation, not the subordinate.

138. Plaintiff was subjected to a hostile work environment by a subordinate

employee who exhibited discriminatory, harassing and retaliatory behavior.  When Plaintiff reported his discriminatory, harassing and retaliatory conduct to management it did not take prompt remedial action to correct the situation.  She was repeatedly and continuously subjected to discrimination, harassment and retaliation which was intolerable.

139.   Alex Hermida had repeated and ongoing problems caused by his gender discrimination that made for a hostile work environment for Plaintiff.  He told another employee that a transgender person who was a State employee had a grudge against all men.  Further, female staff in the research department said he would corner them and force them to discuss things that he disagreed with them on.  Alex Hermida went so far as to threaten people with being racist if they did not make complaints against Meredith Fergus.  His overall approach to women was discriminatory and he projected his anger and harassing attitude toward Meredith as his supervisor causing her numerous problems including at work and mental and emotional distress.

140.   Communications and assignments given by Plaintiff to her subordinate Alex Hermida were repeatedly not completed and/or returned in a timely way based on his discrimination toward Plaintiff because of her female gender.

141.   Alex Hermida interrupted Plaintiff when she talked and excluded her from the information curve purposely.  She was excluded from meetings and

occasions by him because of her female gender.

142.   In meetings Plaintiff's narrations and opinions were not given just weight as opposed to the reliance the Defendant put on what males communicated even though they had less knowledge and experience.   During Plaintiff's career she repeatedly observed males who had less experience and knowledge to her get promoted while she was passed over because of her female gender.

143.   But for the fact of Plaintiff's being a female person, she would not have been recipient of gender discrimination by Defendant.

144.   State of Minnesota's method of discrimination was carried out and motivated by her female sex and exposed her to disadvantageous terms and conditions of employment when compared with members of the opposite sex.

145.   State of Minnesota created a pervasive hostile environment that constructively changed Plaintiff's working conditions. Her livelihood and professional standing were severely affected by the hostile work environment that was present at the State of Minnesota.

146.   State of Minnesota out of discrimination targeted Plaintiff for excessive and unjustified performance scrutiny based on her gender.   As a woman who resisted and reported discrimination, harassment and retaliation by Alex Hermida her male subordinate she was discriminatorily and retaliatorily passed over for new opportunities and demoted in favor of a less qualified person.   Further, she was not

given the respect and acknowledgment of the value of her advice because of her gender.  State of Minnesota made her feel inferior to her male counterparts by its treatment of her as compared to the way they did males.

147.   After Plaintiff filed an EEOC charge State of Minnesota intentionally made false and distorting statements to the EEOC about her performance to discredit her.

148.   As an employee of State of Minnesota, Plaintiff was engaged in a protected activity as a woman when it wrongly and discriminatorily failed to take prompt remedial action to protect her.  As a result of Defendants forgoing failures the Plaintiff suffered adverse employment action.

149.   In furtherance of Defendants blame the victim approach comments credited to Meredith Fergus have been taken out of context and blown up.  She was given communications at a time when she was severely depressed because of the hostile work environment and did not have the strength and will to fight the oppressive and unfair nature of them.  The reality is that she did point out the unfair nature of what she had been forced to do.  For the State to blow up out of proportion the seriousness of a natural response by Meredith to the stress caused by discrimination and harassment is again blaming the victim.

150.   Defendant State intentionally punished Plaintiff for acts done against her by Mr. Hermida based-on gender discrimination, potentially to ruin her career

and force her out of her job all to protect the right of the Defendant State to support discrimination, harassment and retaliation by Alex Hermida based on his gender discrimination toward Plaintiff.

151.   Plaintiff's damages include the failure by Defendant to even interview her for a job promotion where she could have had higher earnings of up to as much as 12 percent higher than what she was earning because of discrimination, the loss of wage increase, harm to her career by distorted and inaccurate material about Plaintiff placed Defendant's in files, ongoing mental and emotional distress and attorney's fees and costs.

152.   Based on the repeated and continuous discrimination, harassment and retaliation by Alex Hermida and Defendants condoning it there were damaging information to Plaintiff's career that she has reason to believe were wrongfully put in files held by Defendant that have and will be used against her.  Meredith Fergus has respectfully asked that all employment related files on her or about her be purged of any negative reports, disciplinary actions, and complaints related to Alex Hermida, including from personnel files maintained by individual mangers, supervisors, directors and any other person who has reason to have personnel information on Meredith.  The Defendant was not willing to do this despite knowing that that by not doing so it was continuing to pursue a blame the victim approach. Further, the Defendant wouldn't agree not to use that material in considerations

related to Meredith's future raises, promotions and status with the Defendant State.

153.   Plaintiff's supervisors including a deputy commissioner knew about the gender discrimination against Plaintiff by Hermida but failed to take prompt remedial action.  By not being willing to stop the use of these discriminatory based acts by Mr. Hermida there would be no protection or cure of the damage being done to Plaintiff or could be done to her in the future.   The Plaintiff's supervisors intentionally did wrongful acts without justification or excuse in violation of federal law including Title VII and a constitutionally protected right under the fourteenth amendment.

154.   The Defendant which is a governmental unit that had actual knowledge of the dangerous condition created by Mr. Hermida's gender discrimination.

155.   Plaintiff as an employee of Defendant had a reasonable reliance on the governmental unit's representations and conduct that it would protect her as a woman against gender discrimination. This reliance must be based on specific actions on representations that cause her to forgo other alternatives of protecting herself.

156.   Title VII, The Minnesota Human Rights Act section 363A.08 and the fourteenth amendment are statutes that set forth mandatory acts clearly for the protection of a particular class of persons namely people of the female gender rather than the public as a whole and Plaintiff is in that protected class.

157.   The Defendant State under prevailing law had a duty of care in avoiding

increasing the risk of harm, which it failed to do.

158.   The above gender discrimination and related retaliation by State of Minnesota against Plaintiff have caused her to experience deep depression, anxiety, loss of sleep, and other severe mental and emotional distress.

159.   The forgoing gender discrimination and related retaliation are the proximate cause of severe damage to the Plaintiff.

160.   Wherefore, the Plaintiff has been severely damaged by State of Minnesota and its agents in excess of $75,000.

SECOND CAUSE OF ACTION
VIOLATION OF 42 USC SECTION 1983
(Involves State's employee Deputy Commissioner Winnie Sullivan).

161.   The previous paragraphs are re-alleged herein and are incorporated by reference.

162.   Defendant state of Minnesota which is a governmental body employed people who had supervisory control over both Plaintiff and Mr. Hermida who was her subordinate. One of these supervisors was a deputy commissioner Winnie Sullivan. Deputy Commissioner Winne Sullivan's actions is the basis for the instant § 1983 claim.

163.    Plaintiff discussed the problems with Mr. Hermida's ongoing gender discrimination with Deputy Commissioner Winnie Sullivan.  The Defendant showed no interest in taking prompt remedial action and ending the hostile work

environment that was having an adverse employment effect on the Plaintiff.  Deputy

Commissioner Winnie Sullivan was hesitant about taking appropriate action to end

the hostile work environment including terminating Mr. Hermida despite knowing

of his repeated and continuous gender discrimination.

164.   In discussion between Plaintiff and Defendant Sullivan about Alex

Hermida rather than take corrective action to end the hostile work environment

Deputy Commissioner Sullivan chose to keep him in the environment knowing that

his attitude was toxic.  Instead of showing an interest in removing him from the

workplace she wanted to attempt to find other performance management strategies,

where he would continue to be under Plaintiff and free to discriminate against her,

to deal with Mr. Hermida despite knowing his resistance to strategies tried to date.

The failure to remove Mr. Hermida was a failure to take prompt remedial action

which was an adverse employment action that caused Plaintiff severe damage.

165.   Commissioner Sullivan had a negative attitude toward Plainitiff for

resisting and reporting Mr. Hermida's gender discrimination.  She retaliated against

Plaintiff for her oral resistance to gender discrimination at the workplace and reports

of it by subjecting Plaintiff to negative treatment and commentary in her

employment file knowing this would damage Plaintiff's future ability to get raises

and promotions.

166.   Plaintiff's supervisor duty commissioner Winnie Sullivan under color

of law subjected, or caused to be subjected the Plaintiff who was a citizen of the United States within the jurisdiction thereof to the deprivation of her rights, privileges, or immunities secured by the Constitution and laws of the United States and the state of Minnesota

167.   Defendant Winnie Sullivan deprived Plaintiff of her right to be free from Gender discrimination, the right to equal protection, due process, and free speech.

168.   The conduct of Defendant Winnie Sullivan including her covering up of gender discrimination, harassment and retaliation by Mr. Alex Hermida heightened the resulting hostile work environment maintained by Defendant which was an adverse employment action taken against Plaintiff.

169.    Winnie Sullivan a deputy commissioner for the state of Minnesota did acts against Plaintiff that have had negative financial consequences and emotional impact on Meredith Fergus.  Plaintiff has been punished for resisting and reporting gender discrimination against her while employed by the state of Minnesota which is a governmental body.

170.   Defendant Winnie Sullivan took negative action against Plaintiff for resisting and reporting gender discrimination.  One of the negative actions taken by Defendant against Plaintiff were in performance reviews.

171.   Performance reviews and complaints of employees of Defendant are

accessible by hiring managers within any agency of the State of Minnesota. The presence of complaints resulting from coercion by Mr. Hermida and the falsely negative approaches displayed by Defendant have and will negatively impact Meredith Fergus's ability to be promoted or change jobs within the State of Minnesota.

172.   The defendant Winnie Sullivan subjected or caused the plaintiff to be subjected to a deprivation of federal rights including free speech, freedom from gender discrimination, equal rights, and due process. There was a causal relationship between the defendant's conduct and the deprivation of the plaintiff's federal rights; and a causal relationship between the deprivation and the plaintiff's damages.

173.   The Defendant did not follow a fair process of investigation and proper devaluation but rather arbitrary decided to fail to address the ongoing damage that was occurring through Mr. Hermida's gender discrimination that was causing a hostile work environment.

174.   There was no reasonable basis for Winnie Sullivan's conduct in failing to take prompt remedial action toward the gender discrimination by Mr. Hermida nor for punishing Plaintiff for reporting Mr. Hermida or verbally addressing issues related to improper conduct by a subordinate at the workplace.

175.   There was a direct causal link between the Defendants action and the deprivation of federal rights under Title VII, the First, Fifth and the fourteenth

Amendments. The defendant's action was the moving force that caused the deprivation of Plaintiff's forgoing rights. It was foreseeable by Defendants that if Mr. Hermida was not removed from the workplace the hostile work environment would continue and get worse. Similarly, it was foreseeable that the Defendant's retaliation against the Plaintiff for resisting or reporting discrimination would be chill her rights and she would be further injured.

176. Defendants Winnie Sullivan and the State of Minnesota a public employer retaliated against the plaintiff for her exercise of First Amendment rights. In making Plaintiff making her reports to Defendant or talking with a subordinate Plaintiff was engaged in speech that was constitutionally protected. Defendants took an adverse employment action against the plaintiff for exercising these rights. Meredith Fergus protected speech was a substantial or motivating factor for the defendant's adverse employment action.

177. The Plaintiff reported to Winnie Sullivan gender discrimination at a state agency that is a matter of public concern. She did so as a public employee. The Plaintiff's protected speech was a substantial or motivating factor in the defendant's adverse employment action against the Plaintiff. There was not adequate justification for treating the Plaintiff differently from other members of the public who should not be subjected to gender discrimination or be able to resist or report gender discrimination without retaliation. The defendant Winnie Sullivan would not

have imposed the adverse employment action of putting adverse information in her employment file if plaintiff had not engaged in protected speech in resisting and reporting discrimination by a subordinate. The Defendant Winnie Sullivan was the final decision maker since she acted as both Plaintiff's supervisor and the head of HR for Plaintiff's working unit.

178.   Plaintiff had a First Amendment right to freedom of speech in reporting, criticizing or expressing frustration with gender discrimination by a subordinate

179.   Plaintiff's supervisor Winnie Sullivan caused the plaintiff to be subjected to a deprivation of her rights under Title VII, the Fifth Amendment, the Fourteenth Amendment and the First Amendment that resulted in a constitutional deprivation. Further, Winnie Sullivan a deputy commissioner who was Plaintiff's supervisor caused the plaintiff to be subjected to a deprivation by knowingly refusing to stop a series of acts by Alex Hermida and others, which the supervisor actually knows or objectively should know would cause Plaintiff to have her constitutional rights damaged.

180.   The adverse employment action described above by Defendant deputy commissioner Winnie Sullivan could have been lessened or mitigated but for Defendant deputy commissioner.

181.   The forgoing negative actions by Defendant Winnie Sullivan against Plaintiff have been the direct and proximate result of severe damage to Plaintiff.

This damage is in excess of seventy-five thousand dollars.

MINNESOTA STATE CLAIMS

THIRD CAUSE OF ACTION

GENDER DISCRIMINATION IN VIOLATION OF THE
MINNESOTA HUMAN RIGHTS ACT,
MINN. STAT. §363A.08 ET SEQ., AS AMENDED
AGAINST THE STATE OF MINNESOTA

182.   The previous paragraphs are re-alleged herein and are incorporated by reference.

183.   While working for State of Minnesota the Plaintiff was a victim of gender discrimination.  Defendant State of Minnesota treated her differently and worse than it did male co-workers.

184.   Knowing of Alex Hermida's campaign of gender discrimination the Defendant State used his action and the consequences of it in a way to poison the career of Plaintiff.  It used his discriminatory positions and her rightful reactions to it to falsely case her in a false light and put a barrier to her continued ability to get rightfully deserved raises and promotions.

185.   The Defendant state has discriminatorily and retaliatorily glossed over the adverse employment action that exists within Plaintiff's personnel file and the fact that the State continued to employ Alex Hermida a person who was known to be discriminatory toward women.

186.   The Defendant state in furtherance of its condoning the gender

discrimination by Alex Hermida has maintained negative personnel material generated by Alex Hermida out of gender discrimination related to Plaintiff that will continue to exist within her supervisor's so-called "personnel file." It has made that this discriminatory, harassing and retaliatory information will remain in it and will follow her throughout her career at the State of Minnesota and has the potential to result in adverse decisions involving Meredith Fergus until such time as she may leave the State's employment; and potentially thereafter if a prospective employer contacts her supervisor and/or any other supervisor, director, department head etc., who maintains a shadow personnel file on Meredith Fergus. This information related to Meredith Fergus presents a false and misleading picture of what occurred and demonstrates Defendants ongoing commitment to perpetuating the discrimination, harassment and retaliation against Plaintff.

187. Tasks assigned to Alex Hermida including but not limited to work give to him and communications with fellow employees and his supervisor the Plaintiff were not handled in a proper manner. Instead Alex Hermida discriminated, harassed and retaliated against his supervisor the Plaintiff based on gender discrimination. Supervisors interrupted her when she talked and excluded her from the information curve purposely. The Defendant employer allowed Hermida to continue to discriminate against Plaintiff while putting undue pressure on her to in effect blame the victim the Plaintiff for the negative work environment caused by Alex Hermida.

Despite the Defendant knowing that Alex Hermida was causing a hostile work environment it kept him on as an employee when it was foreseeable that the Plaintiff would be damaged.

188.   But for the fact of Plaintiff's being a female person, she would not have been recipient of gender discrimination by Hemida and Defendant.

189.   State of Minnesota's method of discrimination was carried out and motivated by her female sex and exposed her to disadvantageous terms and conditions of employment when compared with members of the opposite sex.

190.   While employed by Defendant Meredith Fergus observed men with less experience and knowledge then she had received promotions while the State of Minnesota passed over her because of Meredith Fergus female gender.

191.   Defendant's method of discrimination was carried out and motivated by her female sex and exposed her to disadvantageous terms and conditions of employment when compared with members of the opposite sex.

192.   Defendant created a pervasive hostile environment that constructively changed Plaintiff's working conditions. Her livelihood and professional standing were severely affected by the hostile work environment that was present at the State of Minnesota.

193.   Defendant discriminatorily directed excessive and unjustified scrutiny of her performance as opposed to what it did for her male counterparts.  As a woman

the Defendant passed over her for promotions, raises and recognition. Defendant by its gender discrimination did not show respect and acknowledgment of Plaintiff but instead invalidated her. She was given more work than her male counterparts while receiving less recognition for her accomplishments.

194. Defendant created a pervasive hostile environment that constructively changed Plaintiff's working conditions. Her livelihood and professional standing were severely affected by the hostile work environment that was present at the State of Minnesota. Up to 300 days before filing a joint EEOC/MHRA charge Defendant discriminated against Plaintiff based on her gender. State of Minnesota continued to discriminate, harass and retaliate against Plaintiff up to the signing of this complaint.

195. After Plaintiff filed a joint EEOC/MHRA charge State of Minnesota intentionally continued to allow the negative effects of Alex Hermida's discrimination to have a negative effect on Plaintiff's employment record and opportunities.

196. As an employee of Defendant, Plaintiff was engaged in a protected activity when it wrongly and discriminatorily used the discriminatory conduct directed at her by Alex Hermida to cause harm to her professional standing and future career opportunities.

197. The above gender discrimination and related retaliation by Defendant

against Plaintiff have caused her to experience deep depression, anxiety, loss of sleep, and other severe mental and emotional distress.

198.   The forgoing gender discrimination and related retaliation are the direct and proximate cause of severe damage to the Plaintiff.  Meredith Fergus has been severely damaged by State of Minnesota and its agents in excess of $75,000.

**WHEREFORE**, Plaintiff prays for the judgment of this Court awarding her the following relief.

### FEDERAL

A.   Awarding judgment against State of Minnesota for gender discrimination in excess of $75,000 in violation of Title VII of the federal law, 42 U.S.C. §20002, *et seq.*, as amended.

B.   Awarding judgment against Winnie Sullivan for gender discrimination in excess of $75,000 in violation of 42 U.S.C. §1983, as amended.

### STATE

C.   Awarding judgment against State of Minnesota in excess of $75,000 for gender discrimination in violation of Minn. Stat. § 363A.08 *et seq*, as amended.

D.   For such other and further relief which to the Court seems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues trial by jury.

Dated: April 30, 2022                    Neff Law Firm, P.A.

                                         */s/Fred L. Neff*
                                         Fred L. Neff, Atty. Reg. #0077355
                                         One Corporate Plaza, Ste. 165
                                         7400 Metro Boulevard
                                         Edina, MN  55439
                                         Telephone: (952) 831-6555
                                         Facsimile: (952) 831-2711 Email:
                                         info@neff-law-firm.com

                                         *Attorney for Meredith Fergus*

### ACKNOWLEDGMENT

The undersigned hereby acknowledges that pursuant to Fed.R.Civ.P. Rule 11 and Minn. Stat. §549.211, the Court may impose sanctions if it finds a violation of these sections.

Dated: April 20, 2022                    Neff Law Firm, P.A.

                                         */s/ Fred L. Neff*
                                         Fred L. Neff, Atty. Reg. # 0077355
                                         One Corporate Plaza, Ste. 165
                                         7400 Metro Boulevard
                                         Edina, MN  55439
                                         Telephone: (952) 831-6555
                                         Facsimile: (952) 831-2711 Email:
                                         info@neff-law-firm.com

                                         *Attorney for Meredith Fergus*

Acknowledgement

I, Meredith Fergus, have read the foregoing Complaint and under the pains

and penalties of perjury hereby state that to the best of my knowledge and belief

the information, and the factual statements therein are true and correct.

Dated: _____        _____

Meredith Fergus