UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Meredith Fergus,

      Plaintiff,

v.

Minnesota Office of Higher Education,
*an agency of the State of Minnesota*,

      Defendant.

File No. 22-cv-1130 (ECT/DTS)

**OPINION AND ORDER**

Frederick L. Neff, Neff Law Firm, P.A., Edina, MN, for Plaintiff Meredith Fergus.

Jeffrey A. Timmerman and Anna L. Veit-Carter, Minnesota Attorney General's Office, St. Paul, MN, for Defendant Minnesota Office of Higher Education.

      Plaintiff Meredith Fergus works as director of the Research Department for Defendant Minnesota Office of Higher Education ("OHE"). She brought this lawsuit alleging that one of the employees she supervised created a hostile work environment and that the OHE's failure to protect her from that hostile environment constituted discrimination and retaliation in violation of federal and state employment laws. The OHE has moved to dismiss Fergus's operative Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 14. The motion will be granted because Fergus's state claim is barred by sovereign immunity, and she has failed to allege facts plausibly establishing essential elements of her federal claim.

I[1]

Fergus has worked at the OHE since 2008.  Second Am. Compl. [ECF No. 7] ¶ 17. She alleges that her difficulties at the workplace began in 2018 with the hiring of Alex Hermida, who was Fergus's subordinate in the Research Department.  *Id.* ¶ 20.  According to Fergus, Hermida refused to follow her directions and feedback because of her gender.  *Id.* Despite Fergus attempting to remedy Hermida's behavior and complaining to the OHE's Deputy Commissioner regarding Hermida's conduct, Fergus alleges that the OHE would not "give Plaintiff the power to take appropriate action to stop what [the OHE] knew was his repeated and continuous gender discrimination, harassment and retaliation."  *Id.* ¶ 21.

At some point in early 2020—the complaint doesn't specify the date—Hermida filed a "Respectful Workplace Complaint" against Fergus.  *Id.* ¶ 26.  Fergus contends that the filing of this complaint was retaliatory.  *Id.* ¶ 27.  Fergus also alleges that the OHE's investigation of the complaint denied Fergus her free-speech rights and rights to substantive and procedural due process, and that the OHE discriminated against her by not investigating Hermida for conduct that Fergus claims was worse than that of which she was accused.  The Second Amended Complaint does not include allegations indicating the investigation's outcome, though it appears that Fergus "agreed to not repeat th[e] alleged behavior" that prompted Hermida's complaint.  *Id.* ¶ 41.

---

[1]   In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn entirely from the Second Amended Complaint. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

In July 2020, Fergus applied for a promotion to Assistant Commissioner for Policy, Programs, and Grants. *Id.* ¶ 69. She did not receive an interview, and Fergus alleges that her failure to be interviewed for, or receive, the promotion was a consequence of Hermida's first complaint against her. *Id.* Fergus also alleges that the OHE did not give her the resources she needed to deal with Hermida, despite her requests, and that the OHE discriminatorily increased her workload despite knowing the stress she was under as a result of Hermida's behavior. *Id.* ¶¶ 70, 72.

The Second Amended Complaint describes in general terms what Fergus contends was Hermida's "discriminatory and harassing behavior against female and transgender colleagues." *Id.* ¶ 65.[2] The pleading sets out the general parameters of this behavior in a multi-part list that spans ten pages but does not specifically describe any particular conduct or indicate when any of the alleged conduct occurred. *Id.* ¶ 66; *see also id.* ¶ 85 (generally describing additional allegedly discriminatory and harassing behavior).

In March 2021, Fergus filed a complaint with OHE against Hermida. *Id.* ¶ 47. She claims that the OHE failed to investigate this complaint. *Id.* ¶ 46. Hermida then filed another complaint against Fergus. *Id.* ¶ 51. In response to Hermida's second complaint, Fergus resigned because of "the hostile work environment created by Alex Hermida." *Id.* The OHE's Assistant Commissioner asked Fergus to reconsider, and Fergus rescinded her resignation. *Id.* Hermida left his job in July 2021; Fergus remains employed at OHE. *Id.* ¶ 68.

---

[2] Fergus does not allege that she is transgender. The relevance of her reference to discrimination against transgender individuals is therefore not clear.

Also in July 2021, the OHE issued a "letter of expectations" to Fergus. *Id.* ¶ 52. Though not specifically described in the complaint, this letter seems to have accused Fergus of bad-mouthing other employees; Fergus contends that either the situation was a misunderstanding or that it was conduct that had been dealt with in the previous investigation. *Id.* ¶¶ 53, 56. She claims that she requested more specific information about the "charges" in the letter but has never received that information. *Id.* ¶ 56. She also claims that some of the charges in the letter were meant to chill her free-speech rights. *Id.* ¶ 57. And she alleges that other members of her team later told her that Hermida coerced them into making the charges included in the letter. *Id.* ¶ 60. The Second Amended Complaint does not clearly explain what the outcome of the letter of expectations was, but it appears that in the fall of 2021, the OHE asked an external facilitator to work with Fergus and her team. *Id.* ¶ 64.

Fergus alleges that the OHE discriminated against her by "maintaining separate and more favorable approaches to Alex Hermida a male employee and denying plaintiff, a female employee the opportunity of obtaining better conditions of employment." *Id.* ¶ 102. She alleges that the OHE had a "long-standing policy, practice, custom and usage of limiting the employment and promotional opportunities of female employees of defendant because of their gender" but does not give any examples of this alleged policy or practice. *Id.* She asserts that female employees are treated dissimilarly to male employees in numerous generic ways. *Id.* ¶ 106. And she says that she "holds a lower title and lower income than male employees with less time at State of Minnesota, experience or knowledge." *Id.* ¶ 107. She repeatedly insists that the OHE "set her up for failure" by not giving her the assistance

4

she needed and by not taking "prompt remedial action" against Hermida and instead "[going] after Plaintiff the victim." *Id.* ¶¶ 90, 113. She complains that she was overly scrutinized and criticized when male managers were not. *Id.* ¶ 120. According to Fergus, the OHE's alleged discriminatory practices continue to the present. *Id.* ¶ 118.

Fergus filed a charge with the Equal Employment Opportunity Commission ("EEOC"), cross-filed with the Minnesota Department of Human Rights ("MDHR"). *Id.* ¶ 6. She received a notice of right to sue, and this lawsuit followed. *Id.* ¶ 9. In addition to the previous allegations, Fergus also contends that OHE retaliated against her after she filed the EEOC charge by "intentionally ma[king] false and distorting statements to the EEOC about her performance to discredit her." *Id.* ¶ 174.

The Second Amended Complaint raises two claims of gender-based employment discrimination against OHE: one brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the other brought under the Minnesota Human Rights Act, Minn. Stat. § 363.08. In her Title VII claim, Fergus describes alleged violations of her First Amendment free-speech rights, Fifth Amendment due-process rights, and Fourteenth Amendment equal-protection rights. *Id.* ¶¶ 154–64. Fergus has not, however, asserted a claim under 42 U.S.C. § 1983.[3] In addition to these constitutional allegations, Fergus's Title VII claim asserts that the OHE "created a pervasive hostile environment that constructively changed Plaintiff's working conditions," *id.* ¶ 172–90, referencing Hermida's conduct.

---

[3] Fergus's original Complaint included a § 1983 claim brought against Deputy Commissioner Winnie Sullivan. *See* Compl. [ECF No. 1] ¶¶ 161–181. Fergus dropped this claim from her Second Amended Complaint, and Commissioner Sullivan is no longer named as a defendant.

5

Fergus also alleges that she was "subjected to unwelcome gender discrimination, sexual harassment and retaliation based on her female sex," but does not specifically describe any of the alleged discrimination, harassment, or retaliation. *Id.* ¶ 138.

II[4]

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog*, 760 F.3d at 792 (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its

---

[4] A hearing on this motion was held on Monday, September 26, 2022. The hearing was scheduled to begin at 9:00 a.m. Fergus's counsel was not present at that time, prompting the Court to delay the hearing and undertake several efforts to contact him. In particular: (1) The courtroom deputy telephoned counsel's office at 9:00 a.m. at the number listed on the case's docket. There was no answer, however, and the call went to a voicemail that indicated it was full and not taking messages. (2) The courtroom deputy next emailed counsel at the email address listed on the docket to remind him that there was a hearing at 9:00 and to see if he was running late. (3) The courtroom deputy reviewed the signature block on counsel's brief to determine see if he had a different telephone number at which he might be contacted, but no different number was listed. (4) The courtroom deputy attempted to contact counsel at an alternative telephone number obtained from Defendant's counsel. That call went to voicemail. After undertaking these efforts, and hearing nothing from Fergus's counsel, the hearing went forward at 9:30 a.m. Roughly two hours later, the Court received a call from counsel's office explaining that counsel had fallen ill during the weekend of September 24–25 and was for that reason not able to attend the hearing. Letters have since been received from counsel's physician (on September 26) and from counsel personally (on September 30) explaining the situation. Counsel has not requested an opportunity to be heard in person. Regardless, in view of the failure by counsel (or his office) to contact the Court before the hearing and the relatively straightforward nature of the issues, I find that a rehearing is not warranted.

face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Sovereign immunity.* Fergus's MHRA claim is barred by sovereign immunity because, as an agency of the state of Minnesota, the OHE is immune from state-law claims in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984) ("[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment."). Fergus argues that 28 U.S.C. § 1367(a), which provides for supplemental federal jurisdiction over pendent state claims, makes the exercise of federal jurisdiction over her MHRA claim appropriate. This is not correct. Supplemental jurisdiction does not trump sovereign immunity. *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 542 (2002) ("[W]e hold that § 1367(a)'s grant of jurisdiction does not extend to [state] claims against nonconsenting state defendants."); *see also Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir. 2000) ("The Eleventh Amendment bars federal court jurisdiction over state law claims against unconsenting states or state officials . . . . This constitutional bar applies with equal force to pendent state law claims.") (citation omitted).

*Exhaustion of administrative remedies.* Title VII requires plaintiffs to exhaust administrative remedies before bringing suit. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Title VII plaintiffs must therefore exhaust their remedies as to each alleged unlawful employment practice. *Richter*,

7

686 F.3d at 851. This requirement serves an important purpose, giving the EEOC "the first opportunity to investigate discriminatory practices and enabl[ing] it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir. 1994). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Wallin v. Minn. Dep't of Corr.,* 153 F.3d 681, 688 (8th Cir. 1998) (citation omitted). A reviewing court must construe an administrative charge liberally. *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002).

OHE argues that Fergus did not exhaust any claim other than her claim of a hostile work environment perpetrated by her subordinate, because the narrative portion of her EEOC charge describes only that claim.[5] Fergus initially misconstrues OHE's argument in this regard, arguing that she "made her complaints to the Defendant and over a year passed and it did not address them." ECF No. 20 at 20. She claims that therefore "there was no administrative remedy to exhaust." *Id.* The exhaustion requirement is not that she exhaust her employer's administrative process, however, but that she adequately present her claims to the EEOC. Regardless, the better answer at this stage is that Fergus exhausted her

---

[5] Fergus did not append her EEOC charge to her pleadings; OHE submitted the charge as an exhibit to a declaration in support of its motion. [ECF No. 17-1.] Although Rule 12(b)(6) motions are evaluated only on the allegations in the pleadings, included in those allegations are matters "necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). In cases raising claims of employment discrimination under Title VII, "the EEOC charge . . . [is] necessarily embraced by the pleadings and [is] properly considered." *U.S. E.E.O.C. v. PMT Corp.*, 40 F. Supp. 3d 1122, 1128 (D. Minn. 2014).

retaliation claim. In the section of Fergus's EEOC charge asking her to check boxes for the types of discrimination she allegedly suffered, she checked both discrimination based on sex and retaliation. Considered in light of the liberal construction due Fergus's administrative charge and Rule 12(b)(6)'s requirement that allegations be viewed in the light most favorable to Fergus, this is enough, at least for now.

*Timeliness*. Because Fergus cross-filed her EEOC charge with the MDHR, the limitations period for claims made in that charge is 300 days. 42 U.S.C. § 2000e-5(e)(1). Only conduct occurring within 300 days of when Fergus filed her EEOC charge can be included in a subsequent lawsuit unless that conduct constitutes a "continuing violation." *See Radcliffe v. Securian Fin. Grp., Inc.*, 906 F. Supp. 2d 874, 885 (D. Minn. 2012) (describing continuing violations doctrine). Continuing violations are a pattern of conduct that extends beyond the 300-day period, and as such, under Title VII, the continuing-violations doctrine is generally available only for claims involving a hostile work environment. *Morgan*, 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); *see also id.* at 115 ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."); *Radcliffe*, 906 F. Supp. 2d at 886 ("[T]he continuing violations doctrine is most frequently addressed in the context of hostile work environment claims.").

Fergus filed her EEOC charge on August 6, 2021. Only those acts of discrimination and retaliation occurring within 300 days of that date—on or after October 10, 2020—are actionable under Title VII. Fergus's contention that Hermida's early 2020 complaint was

9

discriminatory or that her failure to receive a promotion in July of 2020 was retaliatory are therefore time-barred.[6] But Hermida's alleged acts of harassment before October 2020 may be actionable if "an act contributing to the claim occurs within the filing period." *Morgan*, 536 U.S. at 117. As OHE implicitly acknowledges, whether Fergus can establish any continuing violation with respect to her hostile-work-environment claim is not appropriately considered on a motion to dismiss.

*But-for causation.* "The ultimate question in every employment discrimination case . . . is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 153 (2000). Title VII requires a plaintiff to establish that "a particular outcome would not have happened 'but for'" the alleged discriminatory motive of her employer. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020). In other words, Fergus must plead facts "beyond her own speculation, that her alleged mistreatment was due to her protected status." *Bradley v. Widnall*, 232 F.3d 626, 632 (8th Cir. 2000) (abrogated on other grounds by *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011)). Without such facts, her claims of gender-based discrimination, retaliation, and harassment are not plausible. *See Iqbal*, 556 U.S. at 679.

Fergus has not plausibly alleged that she suffered discrimination, retaliation, or harassment because of her gender. It is not sufficient to repeatedly allege that she was treated differently because she is female; she must allege facts that could support her belief that this is the case. Fergus's complaint contains no facts plausibly showing that the alleged conduct

---

[6] Fergus acknowledges that her allegations regarding the July 2020 promotion denial is a discrete act of discrimination and is likely untimely. ECF No. 20 at 23 n.1.

was in any way connected to Fergus's sex. Her Title VII claim therefore fails to state a claim on which relief can be granted.

*Severe or pervasive conduct.* Had Fergus alleged facts plausibly establishing Title VII's but-for-causation requirement, she has not sufficiently pled her claim of hostile-work-environment sexual harassment. This claim requires Fergus to plead and ultimately establish that "1) she belongs to a protected group; 2) she was subjected to unwelcome harassment based on [membership in that group]; 3) the harassment affected a term, condition, or privilege of her employment; 4) her employer knew or should have known of the harassment; and 5) the employer failed to take proper action." *Stewart v. Rise, Inc.*, 791 F.3d 849, 859 (8th Cir. 2015) (quotations omitted). "To be actionable, [the] 'objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Clearwater v. Ind. Sch. Dist. No. 166,* 231 F.3d 1122, 1128 (8th Cir. 2000) (quoting *Faragher v. Boca Raton,* 524 U.S. 775, 787 (1998)). Harassment is conduct that is so "extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

The complaint is fatally light on details regarding the alleged harassment. Fergus alleges that Hermida raised his voice "repeatedly," was insubordinate, that he refused to follow Fergus's directions, and that he was overly critical of Fergus and other female colleagues. Second Am. Compl. ¶¶ 34, 35, 85, 91. But the pleading does not describe these behaviors—there is no indication how Hermida was insubordinate or what he said when he raised his voice, nor is there any description of how frequently "repeatedly" was. Because

"offhand comments[] and isolated incidents (unless extremely serious) [do] not amount to" actionable harassment, *Faragher*, 524 U.S. at 788, it is Fergus's burden to plead the alleged harassing conduct with more specificity. The "severe or pervasive" threshold is a high one, requiring a plaintiff to plead that "the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (cleaned up). The facts as pled do not plausibly suggest that any of the harassment Fergus alleges to have suffered was actionably severe or pervasive.[7]

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant Minnesota Office of Higher Education's Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 14] is **GRANTED**.

2. Plaintiff Meredith Fergus's Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 5, 2022
s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court

---

[7] Fergus has not requested permission to amend her Second Amended Complaint to address the deficiencies identified in the OHE's motion.